UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

MAURICE HARRIS

V.

OFFICE OF THE MIDDLESEX COUNTY DISTRICT
ATTORNEY, LOWELL DISTRICT COURT, CITY OF
LOWELL, MA., LOWELL POLICE DEPARTMENT,
ASSISTANT DISTRICT ATTORNEY KATELYN DRAPER
(in her official capacity), JUDGE NEIL
WALKER (in his official capacity), DET.
HULTGREN (in his official capacity), DET.
TONG PHAY (in his official capacity), DET.
MARK LEBLANC (in his official capacity),
and OFFICER TETRAULT (in his official
capacity),

10 CA 11904 WGY

CIVIL ACTION NO.



**COMPLAINT**

MAGISTRATE JUDGE _Dein_

Parties

1. The plaintiff is a resident of the town of Newton, Middlesex County, Massachusetts and a citizen of the United States.

2. The defendant, Office of the Middlesex County District Attorney, is located in Woburn, Middlesex County, MA.  It is a municipal corporation and is the employer of Defendant Katelyn Draper.

3. The defendant, Lowell District Court, is located in Lowell, MA, also in Middlesex County.  It is a municipal corporation and the employer of Judge Neil Walker, as well as the herein mentioned, yet unnamed Clerk Magistrate who conducted an Ex Parte hearing on 24 April 2010.

4. The defendant, City of Lowell, is a city also located in Middlesex County, MA.  It is a municipal corporation and employs the Lowell Police Department.

5. The defendant, Lowell Police Department, is located in Middlesex County, MA.  It is a municipal corporation and the public employer of defendants: Hultgren, Phay, Leblanc, and Tetrault.

6. The defendant, ADA Katelyn Draper, is and at all times relevant to this cause of action, was an Assistant District Attorney in Middlesex County.  She is sued in her official capacity.

7. The Defendant, Judge Neil Walker, is and at all times relevant to this cause of action, was a Judge in Middlesex County. He is sued in his official capacity.

8. The Defendant, Detective Hultgren, is and at all times relevant to this cause of action, was a Detective of the Lowel Police Department. He is sued in his official capacity.

9. The Defendant, Detective Phay, is and at all times relevant to this cause of action, was a Detective of the Lowell Police Department. He is sued in his official capacity.

10. The Defendant, Detective LeBlanc, is and at times relevant to this cause of action, was a Detective of the Lowell Police Department. He is sued in his official capacity.

11. The Defendant, Officer Tetrault, is and at all times relevant to this cause of aCTION, WAS an Officer of the Lowell Police Department. He is sued in his official capacity.

## Jurisdiction

12. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §1331.

## Facts

13. The Plaintiff, Maurice Harris, seeks redress and begs relief from the Honorable Court, based upon the following set of factys under the Federal Statutes, namely 42 U.S.C. §1983, the Color of Law Statute, for alleged deprivations of rights.

14. On 11 November 2007, the Plaintiff, Maurice Harris, was approached by his fiance at the time, Kristina Silva, who alleged at knifepoint, that Mr. Harris had improperly touched his then-step-daughter.

15. Later that day, Mr. Harris was asked to accompany Detectives Phay and LeBlanc, to the Lowell Police Department Headquarters where upon arrival, a 3-hour-long interrogatory ensued.

16. Ms Silva is the step-daughter of a well-known, Lowell, MA resident by the name of Thomas Wirtanen.

17. Mr. Wirtanen is a defense lawyer, former election commissioner local television personality, famed local folk singer,

who is very familiar to both Lowell Police Department, as well as Lowell District Court personnel.

18. Ms Silva initially called the police from the shared residence of Mr. Wirtanen and his wife, Mrs. Claire Wirtanen, Ms Silva's biological Mother.

19. Neither Ms Silva, nor her minor Daughter, showed any signs of fear toward Mr. Harris. They in fact spent some 2-3 hours in company after the allegations were first made by Ms Silva.

20. Ms Silva presented multiple, fallacious accounts to the Lowell Police, as well as to Department of Children and Family personnel.

21. Ms Silva's accounts bore no place in reality, and were rife with easily discernible indicia of unreliability.

22. Detectives Phay and LeBlanc first presented at 608F Stevens Streety Lowell, MAat approximately 1430L,11 November 2007, for initial interaction with Mr. Harris. This was the then-shared residence of both Mr. Harris and Ms Silva, as well as the two minor children under their care.

23. Lowell Police Detectives presented no choice of transportation to the Lowell Police Station. All three men drove there in a brown, unmarked police cruiser.

24. Mr. Harris gathered from the prescient circumstances, that he had no alternative, other than possible arrest, than to go with the Detectives for questioning.

25. Mr. Harris was questioned in 2 different rooms, by Detectives LeBlanc and Phay, as well as briefly by Detective Hultgren.

26. Mr. Harris was shown a Miranda Rights Waiver Form by Detective Phay, while Detective LeBlanc was out of the room.

27. During the interrogation, Mr. Harris unambiguously denied any criminal activity, while the Detectives offered no reasonable inferrence to him that they had any want for the actual truth.

28. During the interrogation, Mr. Harris was asked to explain the circumstances which led to the confrontation with Ms Silva which also first intimated to Mr. Harris that Ms Silva was of the opinion that he had improperly touched her then-six-year-old Daughter.

29. As part of the explanation, Mr. Harris stated to the Detective that Ms Silvaapproached him at approximately 0830L, on 11 November 2007, with a knife in her right hand, stating: "If you ever touch my Daughter again, I will kill you!".

30. Said knife came within 1-2 feet of Mr. Harris' neck, on the left side of his body. This occured in the center of the bedroom they shared at the time.

31. Mr. Harris accusation regarding Ms Silva's conduct, proffered as it was during an interrogation of Mr. Harris, bears a very high indicia of reliability. It provided more than mere Probable Cause to believe that Mr. Harris was a victim, as defined by MA General Laws, Chapter 209A.

32. Mr. Harris was a victim of domestic abuse, yet was not offered the protections guaranteed to him as such, in MA General Law 209A, §6, the Powers of the Police.

33. Lowell Police Detectives LeBlanc, Phay and Hultgren, intentionally deprived Mr. Harris of these protections, as required by the aforementioned law.

34. This deliberate failure violates Mr. Harris' right to the Equal Protection of the Law, as guaranteed by the U.S. Constitution.

35. The Plaintiff seeks the following relief from the Honorable Court:

   a.)$500,000 in punitive relief

   b.)$1,000,000 in compensatory relief, and/or

   c.)An Abuse Prevention Hearing, based upon said facts, or at the least, an injunction against the Abuse Prevention Order currently in place against Mr. Harris, which precludes him from having any contact whatsoever with his minor Daughter, Gabriella Enisi Harris.

36. The Plaintiff, Mr. Harris, adopts 1-35 in whole, as facts bearing upon further pleading.

37. During the interrogation on 11 November 2007, Mr. HArris was never properly Mirandized by any Lowell Police personnel, This is a violation of Mr. Harris' Constitutionally-protected rights against self-incrimination and to Counsel.

38. The Plaintiff seeks the following relief from the Honorable Court:

   a.)$100,000 in punitive relief, and/or

      b.) The Court to determine the interrogation to be fatally
         flawed, and/or

      c.) Any other such relief that the Honorable Court deems
         to be in the best interests of justice.

39. Mr. Harris adopts 1-38 above, in whole, as facts bearing upon
further pleading.

40. Upon the conclusion of the interrogation, Detective Hultgren
approached Mr. Harris in the interview room.  His manner was
intimidating and in furtherance of soliciting inculpatory
admissions from Mr. Harris, as such, it is a part of the
interrogation.

41. This confrontation was intentionally withheld from the
transcript offered to the Defense team representing Mr. Harris
in his criminal matter.

42. Upon completion of the interrogation, Mr. Harris was released
from custody and was initially awaiting a ride home, proffered
by Detective Hultgren.

43. Approximately 30 minutes expired between the time that the
interrogation ended and the eventual arrest of Mr. Harris.

44. Mr. Harris was arrested at approximately 1830L, by Detectives
Hultgren and LeBlanc, without an Arrest Warrant.

45. More than 36 hours passed between the time of Mr. Harris'
arrest at 1830L, 11 November 2007 and his arraignment, on
13 November 2007, at approximately 1500L.

46. This arrest was in contravenance of MA law, which requires
warrantless arrestees to be brought before a Judge or Clerk
Magistrate, within 24 hours of a no warrant arrest.  This also
offends MA Constitution, Amendment 12, as well as the U. S.
Constitution, Amendment 14.

47. Mr. Harris seeks the following relief from the Honorable
Court:

      a.) $250,000 in punitive relief, and/or

      b.) The complete eradication of the arrest and positively-
         disposed charges, from the Criminal Offender Record
         Information (CORI) database, and/or

      c.) Any other such relief the Honorable Court deems to be
         in the best interests of justice.

47. The Plaintiff, Mr. Harris, adopts 1-47 in whole, as facts bearing upon further pleading.

48. On 12 November 2007, Ms Silva provided a 'Victim/Witness Statement' to Detective Mark LeBlanc, at Lowell Police Department Headquarters, whereupon she stated, against her own pecuniary interests, that she did in fact abuse Mr. Harris, by brandishing a knife to the throat of Mr. Harris, while stating: "If you ever touch my Daughter again, I will kill you!".

49. Ms Silva's admissions, against her own pecuniary interests as they were, provided highly reliable evidence of her own actual guilt of the crime of assault upon the person of Mr. Harris.

50. As defined by MA General Law 209A, §6, the police, namely Detective LeBlanc, had a responsibility as a member of law enforcement, to arrest Ms Silva either then or sooner, upon a charge of Assault With A Dangerous Weapon, to wit, a knife.

51. Mr. Harris seeks redress for this cause of action, asking the Honorable Court for the following relief:

    a.) $500,000 in punitive relief, as this failure to arrest, in the face of overwhelming evidence of guilt, severely biased the Plaintiff as well as his minor Daughter and family.

    b.) $500,000 in compensatory releif, and/or

    c.) An Order of the Court, demanding a full and fair investigation into the criminal conduct of Ms Silva, by an independent Prosecutor, and/or

    d.) Any other such relief that the Honorable Court deems to be in the best interests of justice.

53. The Plaintiff adopts 1-52 in whole, as facts bearing upon further pleading.

54. The Plaintiff, Mr. Harris, was presented to the Lowell District Court on 13 November 2007, for arraignment upon the charge of Indecent Assault and Battery on a Child Under the age of 14.

55. Judge Neil Walker was the presiding Judge and issued an Ex Parte Abuse PreventionOrder against Mr. Harris. This order was issued without Probable Cause and in procedural error, as it did not afford Mr. Harris with a '10-day hearing', as required by MA law.

56. This failing violates Mr. Harris' Equal Protection and Due Process rights, as defined by the U. S. Constitution and its accompanying Amendments.

57. Further, this order prohibited the Plaintiff from the free exercise of his Parental Rights, seen by the FederaL statutes as even more sacred than Constitutionally-protected rights.

58, The Abuse Prevention Order assumes abuse that nc  only did not have evidentiary support, but was disproven by virtue of the charges being Nolle Prosequi-ed on 8 October 2009.

59. The Abuse Prevention Order, issued out of the Lowell District Court, barred Mr. Harris from 11 November 2007 onward, from any contact whatsoever w ¿ th his minor Daughter, Gabriella Enisi Harris.

60. Since the order was issued Ex Parte, Mr. Harris' Second Amendment Right to Bear Arms was also absquatulated, by virtue of the restrictions it placed on the Plaintiff.

61. The Plaintiff seeks the following relief from the Honorable Court:

   a.) $1,000,000 in punitive relief, as this abuse precluded Mr. Harris from the free exercise of both his Parental Rights and his duties as a Commissioned Officer with United States Air Force Reserve.

   b.) $2,500,000 in compensatory relief, and/or

   c.) A hearing to vacate the Abuse Prevention Order restriction, barring Mr. Harris' from both his free exercise of PARENTAL Rights, as well as any Second Amendment restrictions upon the liberty rights of the Plaintiff.

   d.) Any other such relief as the Honorable Court deems to be in the best interests of justice.

62. The Plaintiff adopts 1-61 in whole, as facts bearing upon further pleading.

63. From 11 November 2007 through 20 November 2007, the Plaintiff was held at the Middlesex County Jail, in Cambridge,MA.

64. Based upon the allegations against Mr. Harris, known to be suspect at their very genesis, Mr. Harris was placed by staff into 'Protective Custody' in the Special Management Unit, for the pendency of his pre-trial confinement there.

65. This placed Mr. Harris in very real and imminent danger. Mr. Harris was jailed from 11November 2007 to 20 November 2007 and again from 30 November 2007 to 20 August 2008, then again for several days in September 2008. This accounted for a total of 263 days of pre-trial confinement, which counted toward Mr. Harris' eventual sentence.

66. Mr. Harris was the subject of both threatened physical harm and death threats, on an almost daily basis.

67. The blatant disregard for the truth, as well as the principles of justice, demonstrated by the Lowell Police and the District Attorney's Office, biased Mr. Harris as well as his minor Daughter Gabriella Enisi Harris.

68. On 3 Deeember 2007, indictments were sought and received for: 3 counts of Rape of a Child, With Force, Indecent Assault and Battery on a Child Under 14, and Violation of a Restraining Order.

69. Said indictments were sought in spite of the fact that the 'Commonwealth's Statement of Facts' contained many and blatant lies, ommissions, etcetera.

70. The Grand Jury process, as employed against the Plaintiff, represents an Abuse of Process as well as Malicious Prosecution. Assistant District Attorney Katelyn Draper secured said indictments on 'facts' she knew well were in fact not supported by evidence.

71. Further, Defendant Katelyn Draper allowed, even led 2 out of 3 witnesses, to lie while under oath, as part of the Grand Jury testimony.

72. Defendants Leblanc and Tetrault perjured themselves, with the tacit approval, and under the direction of, Defendant Draper.

73. The Grand Jury process, as used against the Plaintiff, was without live witnesses, 'sold a bill of goods' to the Grand Jurors, and was violative of known MA case law, namely MA V. St. Pierre, all of which are not in keeping with the principles of justice.

74. The Grand Jury indictments, as used against the Plaintiff, represent a cause of action for: Intentional Infliction of Emotional Distress, Abuse of Process and Malicious Prosecution.

75. The Plaintiff seeks the following relief from the Honorable Court:

a.) $500,000 in punitive relief,

b.) $1,000,000 in compensatory relief, and/or

    c.) The dismissal of the indictments against the Plaintiff,
    excepting the indictment stemming from the 30 November 2007
    Violation of a Restraining Order charge, and/or

    d.) Any other such relief that the Honorable Court deems to
    be in the best interests of justice.

76. The Plaintiff aDopts 1-75 in whole, as facts bearing upon
further pleading.

77. On 20 November 2007, the Plaintiff was bailed out of the
Middlesex County Jail for $5,000.

78. On 30 November 2007, the Plaintiff, Mr. Harris, sent an email
to Ms Silva, in violation of the no contact provision of the
Abuse Prevention Order.

79. Within one hour of the email being sent, the police were at
Mr. Harris' Mother's apartment, where Mr. Harris was known
to be.

80. The officers who arrived at the residence, knocked and then
simply came in once the door was opened, without first seeking
consent.

81. Officers asked for Mr. Harris, then asked him several incul-
patory questions, without first advising Mr. Harris of his
'Miranda' Rights.

82. Mr. Harris was unambiguously told that he was not under arrest
yet needed to see a Judge and would be back at home within
an hour or so.

83. Mr. Harris was advised by one of the officers at the resi-
dence, to bring smokeless tobacco the officer had seen with
him to the court, for consumption on his way home from the
court house.

84. This arrest, without an arrest warrant to enter a third-party
home, and without consent to enter, was an illegal seizure
of the Plaintiff.

85. This is violative of MA General Law as well as the U. S.
Constitution's Search and Seizure requirements.  The police
entered and continued, under a ruse.  Once outside the home
of the Plaintiff's Mother, the police handcuffed the Plaintif
which then obviated his detention by the police.

86. The Plaintiff seeks the following relief from the Honorable
Court:

    a.) $500,000 in punitive relief

b.) $500,000 in compensatory relief, and/or

c.) Any other such relief that the Honorable Court deems to be in the best interests of justice.

87. The Plaintiff aDOPTS 1-86 in whole, as facts bearing upon further pleading.

88. On 31 November 2007, the Lowell Police again went to the apartment of Mr. Harris' Mother.  The purpose of their trip was to seize the computer of and belonging to Charles Harris, the only Brother of the Plaintiff, who also lived at the apartment.

89. The only justification for the trip and eventual seizure, was that it was incidental to the arrest of the Plaintiff the day previous.

90. The police who arrived 31 November 2007 presented no search warrant for the apartment of the Plaintiff's Mother, a third party and a private citizen, with a presumption of privacy, that short of a legally valid reason, such as a Search Warrant, should not be breached.

91. A search incident to a flawed arrest   , absent a valid, seperate search warrant, untied to the arrest, is itself flawed.

92. The police seized the computer belonging to the Plaintiff's Brother.  They did so without any sort of Search Warrant and maintained possession of it for some 40 days, this despite repeated requests from the Plaintiff's Brother for the return of his illegally-seized property.

93. This creates a cause of action for the invasion of the Plaintiff's without a legal basis as well as the deprivation of the Plaintiff's rights to the same.  The Defendants' actions violated Constitutionally-protected rights of the Plaintiff, as well as MA lawswhich serve to protect the same rights.

94. The Plaintiff seeks the following relief from the Honorable Court:

a.) $250,000 in punitive relief, and/or

b.) Any other such relief that the Honorable Court deems to be in the best interests of justice.

95. The Plaintiff adopts 1-94 in whole, as facts bearing upon further pleading.

96. From the onset of the criminal proceedings against the Plaintiff, there was a conspiracy to violate both his rights to Equal Protection of the Law as well as his rights to Due Process of the Law.

97. The Lowell Police Department, the Office of the Middlesex County District Attorney as well as the Lowell District Court, were active participants in this conspiracy at some point, beginning on 11 November 2007, through at least 24 April 2010.

98. The Plaintiff seeks the following relief from the Honorable Court:

    a.) $1,500,000 in punitive relief

    b.) $1,000,000 in compensatory relief, and/or

    c.) Any other such relief that the Honorable Court deems to be in the best interests of justice.

99. The Plaintiff adopts 1-98 in whole, as facts bearing upon further pleading.

100. On 3 February 2008, the Plaintiff was given a second bail of $7,500 on top of the $5,000 already paid, after surviving the 60-day revocation of his original bail.

101. On 21 August 2008, the Plaintiff applied for and was summarily denied, an Abuse Prevention Order, against Ms Silva.

102. This denial was in the face not only of Ms Silva's inculpatory statements to the police on 12 November 2007, but also in the face of myriad pieces of documentary evidence which served to establish a Prima Facie case of guilt against Ms Silva, for crimes ranging from Felonious Assault, to Larceny, to Obstruction of Justice, et al.

103. The only reason proffered by the Lowell District Court Judge at the time, in support of the summary denial, was that Mr. Harris was then still under indictment for the crimes herein mentioned.

104. The preceeding set of facts represent a Cause of Action for: Abuse of Process, Deprivation of Equal Protection Rights as well as Due Process violations.

105. The Plaintiff seeks the following relief from the Honorable Court:

    a.) $750,000 in punitive relief

    b.) $1,500,000 in compensatory relief, as this failure served to further bar the Plaintiff from the free exercise of both his Parental Rights as well as his Right to Bear Arms and to serve his country as a member of the U.S. Military.

c.)An Abuse Prevention Order hearing based upon the conduct
   of Ms Silva, vis-a-vis Mr. Harris, as well as an ABuse
   Prevention Order hearing to investigate the order currently
   in place against Mr. Harris, and/or

d.)Any other such relief the Honorable Court deems to be in
   the best interests of justice.

106. The Plaintiff adopts 1-105 in whole, as facts bearing upon
     further pleading.

107. On 5 September 2008, the Plaintiff, Mr. Harris, was arrested
     yet again, at the Pollard Memorial Library in Lowell, MA, by
     Detectives Hultgren and Phay.

108. Mr. Harris was asked interrogatory questions, despite asking
     on three different occasions, for either Police Officer to
     Mirandize him.

109. Each time, Mr. Harris was refused any Miranda Rights advise-
     ment, in a very confrontational manner.

110. The Plaintiff, Mr. Harris, asked Detective Hultgren to cuff
     him in the front, when it became apparent from the prescient
     circumstances, that he was under arrest. Mr. Harris stated
     that he had a very fragile right shoulder, from past injuries.

111. Mr. Harris was advised that he was not allowed to be cuffed
     in the front.

112. The Plaintiff then asked the officers to be cuffed in the back,
     but with two sets of cuffs interlinked, so as to mitigate what-
     ever strain might be on the right shoulder, due to the
     awkward position the cuffing would put his shoulder in, if
     cuffed in the back.

113. The Plaintifffis of such a size that even without an injury
     to a shoulder, a reasonable person would cede to cuff him
     in the front, yet this request was summarily denied by
     Defendants Hultgren and Phay.

114. Mr. Harris was then cuffed in what appeared to his eye to be
     what are commonly referred to as 'confrontational cuffs',
     reserved for the most dangerous of suspects.

115. The Plaintiff had never once, through all of his interaction
     with the police and/or the Sheriff's Department personnel,
     presented as a problematic or otherwise uncooperative
     detainee.

116. The Plaintiff, once cuffed, was escorted from the Pollard

Memorial Library, main entrance, to the rear entrance of the
Lowell Police Department Headquarters, some 200-300 yards away.

117. Several times during the walk, Detective Hultgren pulled Mr.
Harris' arms up away from his back and into the air.

118. Despite, and perhaps fueled by, Mr. Harris' complaints of both
pain and past victimization, Detective Hultgren continued to
pull back Mr. Harris' arms in a forceful fashion, while Mr.
Harris was cuffed behind his back and walking to the police
station.

119. The preceeding set of facts creates a Cause of Action for
Assault and Battery upon the person of Mr. Harris, by
Detective Hultgren, all the while in the full view of and with
apparent tacit approval of, Detective Phay.

120. The Plaintiff seeks the following relief from the Honorable
Court:

   a.) $500,000 in punitive rel ef

   b.) $250,000 in compensatory relief, and/or

   c.) An injunction, seeking disciplinary action against Detect-
   ives Hultgren, Phay, LeBlanc, as well as Officer Tetrault,
   and/or

   d.) Any other such relief that the Honorable Court deems to be
   in the best interests of justice.

121. The Plaintiff, Mr. Harris, adopts 1-120 in whole, as facts
bearing upon further pleading.

122. The arrest on 5 September 2008, precipitated a chain of
judicial events which culminated in a 13-month-long period
of House Arrest for the Plaintiff.

123. From 17 September 2008 to 09 October 2009, the ultimate
disposition of the Plaintiff's criminal case, the Plaintiff
was confined to his Mother's small, approximately 400 square
foot apartment.  The only time he was allowed to leave was,
either to meet with his Defense team or to attend pre-trial
court hearings.

124. The Plaintiff had paid bail on 3 different occasions, totaling
$13,000.  His House Arrest served no purpose but that of a
punitive measure, though the Plaintiff was a pre-trial crimin-
al Defendant.

125. But for the 5 September 2008 arrest, the Plaintiff would have
been afforded the liberty that was taken away from him, by
virtue of the House Arrest.

126. To levy punitive measures upon a defendant before the dis-
position of their criminal matter is totally contrary to the
principles of justice and thus are akin to an unlawful depriv-
ation.

127. Through the use of a sham arrest on 5 September 2008, the
Defendants Draper, Hultgren and Phay, deprived the Plaintiff
of not only his liberty for a period of over one year, but
also deprived him of his Constitutionally-protected right to
the Equal Protection of the Law.

128. Under any standard by which the credibility of a potential
witness is measured, the potential 'star' witness for the
Prosecution, the complainant against the Plaintiff in the
5 September 2008 arrest, Ms Silva, fails miserably.

129. The Plaintiff seeks the following relief from the Honorable
Court:

    a.) $1,000,000 in punitive relief

    b.) $500,000 in compensatory relief, and/or

    c.) Any other such relief the the Honorable Court deems
        to be in the best interests of justice.

130. The Plaintiff adopts 1-129 in whole, as facts bearing upon
further pleading.

131. On or about February 2009, the Plaintiff contacted the Lowell
Police Department, to file a complaint against Ms Silva, for
theft of his money, chattels, etc., as well as Assault with a
Dangerous Weapon, to wit, a knife, falsifying Police Reports,
et cetera.

132. The Plaintiff, Mr. Harris, was informed at that time that,
since the case against him was still pending, he would have
to wait, and/or speak with his Lawyer.

133. This is a gross mis-statement of the state of the law, on
the part of the responding officer.

134. The Plaintiff presented more than mere Probable Cause for
numerous charges to be filed against Ms Silva, to include
inculpatory statements that she made to the Lowell Police,
bank statements that showed someone with access to the
Plaintiff's actual bank cards made purchases with them while
he was incarcerated, as well as other documentary evidence.

135. The responding officer was negligent in his duties and
further exacerbated an already tragic miscarriage of
justice.

136. This forms a Cause of Action for deprivation of Equal
Protection rights, by negligent performance of duties, as
well as failure to protect personal property.

137. The Plaintiff seeks the following relief from the Honorable Court:

    a.) $100,000 in punitive relief

    b.) $250,000 in compensatory relief, and/or

    c.) Injunctive relief in the form of mandated retraining for officers who may have occasion to respond to calls of a domestic nature, so as to ensure gender equity, and/or

    d.) Any other such relief that the Honorable Court deems to be in the best interests of justice.

138. The Plaintiff adopts 1-137 in whole, as facts bearing upon further pleading.

139. From 7-9 October 2009, the Plaintiff was before Judge Muse, in Middlesex Superior Court, Woburn, MA.

140. On 7 October 2009, Defendant Draper formally Nolle Prosequied the four Felony charges then pending against the Plaintiff.

141. On 8 October 2009, a trial was held on a charge of Violation of a Restraining Order, where it was alleged that the Plaintiff had hand-delivered a birthday card, to the address of Ms Silva intended for her minor Daughter.

142. The Plaintiff, Mr. Harris, was found Not Guilty, after a Bench Trial, upon said charge.

143. On 9 October 2009, the Plaintiff, Mr. Harris, pled guilty to violation of a restraining order, admitting to sufficient facts to support a guilty finding, with respect to sending an email to Ms Silva, on on 30 November 2007.

144. The Plaintiff was sentenced to time served of 263 days, with the remainder of 2 and a half years suspended, with 5 years of probation.

145. The sentence given to the Plaintiff is an anomoly, which can not reasonably be explained.

146. Mr. Harris had already served more than 8 months, incarcerated in the Middlesex County Jail in Cambridge, MA, as well as 13 months of pre-trial house arrest, under very restrictive, ankle bracelet monitoring.

147. Even after pleading Guilty to the charge, Mr. Harris was given no leniency, which is inferred when someone is honest enough to plead Guilty, saving the Court the time and expense involved in a trial.

148. This is totally contrary to the principles of justice, where the maximum sentences are reserved for the worst of offenses and offenders.

149. The Plaintiff was never arrested in MA previous to the arrests herein described, and only once anywhere else, a charge that was dismissed in the state of Florida.

150. The Plaintiff was punished more for what was alleged, but did not happen, than for what he did do and admitted.

151. The Plaintiff deserves, as does every citizen of the United States, the Equal Protection of the Law, which translates to equal treatment under the law as well.

152. The sentencing Judge completely overstepped his discretion, stopped being objective and fair, which caused him to have the appearance of jaded advocate for the Prosecution.

153. This lack of objectivity caused him to over-sentence the Plaintiff far in excess of what is normal, given the actual circumstances.

154. The sentencing Judge did not adhere to the guidelines of the MA Sentencing Guidelines, which base a sentence on the criminal history of the Defendant, the facts of the case, as well as many other factors, such as whether there was a trial or plea reached in the case.

155. This gives rise to a Cause of Action for the deprivation of the Equal Protection Rights of the Plaintiff, by virtue of Abuse of Process in the excessive over-sentencing of the Plaintiff.

156. The Plaintiff seeks the following relief from the Honorable Court:

a.) $100,000 in punitive relief

b.) $500,000 in compensatory relief, and/or

c.) Injunctive relief in the form of a sort of 'revise and revoke', upon the severity of the sentence and the dealings between the Probation Department and the Trial Court of the Commonwealth post-sentence, especially as it relates to the revocation of the Plaintiff's probation on 21 June 2010, and/or

d.) Any other such relief that the Honorable Court deems to be in the best interests of justice.

157. The Plaintiff adopts 1-156 in whole, as facts bearing upon further pleading.

158. On or about 10 October 2009, Mr. Harris went to the Lowell Police Department, where he eventually met with a Detective.

159. Mr. Harris showed said Detective several documents, to include: a USAA Federal Savings Bank statement (10 November 2007 - 10 December 2007) showing debit and credit card transactions made on Mr. Harris cards on 14 November 2007 (a date on which Mr. HArris was known to be incarcerated in the Middlesex County Jail in Cambridge, MA), a list of chattels belonging to Mr. Harris that were then unaccounted for, police reports, as well as a 'Victim Witness Statement'.

160. These documents more than establish mere Probable Cause, for charges to be filed against Ms Silva.

161. The Detective stated that he needed to call Defendant Draper, yet asked Mr. Harris to email him all pertinent personal and bank information, a directive with which Mr. Harris complied.

162. The Detective never answeredthe email that Mr. Harris sent, nor did he contact Mr. Harris back in any way, even after follow-up emails from Mr. Harris.

163. The preceeding set of facts give rise to a Cause of Action for intentional deprivation of the Equal Protection Rights guaranteed to Mr. Harris by the U. S. Constitution. The Detective intentionally failed to protect Mr. Harris, his personal chattels, as well as the people of the Commonwealth of Massachusetts.

164. The Plaintiff seeks the following relief from the Honorable Court:

   a.)$250,000 in punitive relief

   b.)$250,000 in compensatory relief, and/or

   c.)Injunctive reliefin the form of mandated retraining for Lowell Police Department personnel, in the areas of gender equity and civil rights, and/or

   d.)Any other such relief that the Honorable Court deems to be in the best interests of justice.

165. The Plaintiff adopts 1-164 in whole, as facts bearing upon further pleading.

166. On or about 24 March 2010, the Plaintiff, Mr. Harris, suffered "an arrhythmia, which caused massive and complete cardiac death."

167. Mr. Harris was advised by his Cardiologist, upon his early recovery, and after thorough testing at both Newton-Wellesley Hospital and Massachusetts General Hospital, that there was absolutely no medical reason that he could detect, why Mr. Harris suffered such a near complete death.

168. This leaves but one possible reason for the arrhythmia which nearly cost Mr. Harris his life: long-term and pervasive amounts of stress, caused by the facts herein described.

169. Mr. Harris underwent implantation surgery for an Internal Cardioverter Defibrillator, attached to his heart by means of a tether.

170. This device needs to be surgically replaced, every 7 years, and also precludes Mr. Harris from performing some otherwise routine activities, such as lifting weight over his head using his left arm and going through metal screening devices.

171. Mr. Harris is now medically-required to be monitored further, by means of a wireless electronic device, which sends his daily cardiac parameters, measured by the device, to his Cardiologist, for interpretationand possible intervention, through alteration of said parameters.

172. The preceeding set of facts represent a drastic medical limitation, with which Mr. Harris must now live, for the remainder of his life.

173. But for the circumstances to which Mr. Harris was subjected, vis-a-visthe previous 3 years of judicial iniquity and overly punitive sentencing, the absquatulation of his biological Daughter Gabriella, under the guise of protection, the loss of any and all possessions, except ng a few, as well as the heart-breaking reality of a judicial system rife with gender bias, Mr. Harris would not now be handicapped, as is now and shall be for the remainder of his life.

174. The preceeding set of facts give rise to a Cause of Action for Intentional Infliction of Emotional Distress as well as Assault upon the person of Mr. Harris, causing a severe and permanent handicap.

175. The Plaintiff seeks the following relief from the Honorable Court:

a.) $500,000 in punitive relief

b.) $1,000,000 in compensatory relief, and/or

c.) Any other such relief that the Honorable Court deems to be in the best interest of justice.

176. The Plaintiff adopts 1-175 in whole, as facts bearing upon further pleading.

177. On 24 April 2010, The Plaintiff went before a Clerk Magistrate at the Lowell District Court, in answer to a private citizen complaint he filed against Ms Silva.

178. Mr. Harris specifically demanded an Ex Parte hearing on the complaint, as he alleged numerous felonies against Ms Silva.

179. The felony charges alleged by Mr Harris seemed to remove the complaint from the purview of the Clerk Magistrate, to that of a Judge.

180. Not only was the hearing not held Ex Parte, Ms Silva, with no legal right to appear before charges are filed, was informed at some point prior to the hearing, and presented with a lawyer, to argue against the issuance of any criminal complaints.

181. The argument against criminal charges focused almost entirely upon dredging up the previously Nol e Prosequi-ed charges against Mr. Harris, and not on the presence of Probable Cause to support charges against Ms Silva.

182. The Clerk Magistrate gave no credence to what was a Prima Facie case against Ms Silva, supported by an abundance of documentary evidence.

188. The Plaintiff, Mr. Harris was severely biased and deprived of his inalienable right to the Equal Protection of the Law. The Clerk Magistrate refused to hear the case presented by Mr. Harris for charges to be filed against Ms Silva based upon the merit, but rather turned Mr. Harris away, insisting that there was not Probable Cause to support said charges,

184. The Plaintiff seeks the following relief from the Honorable Court:

   a.) $1,000,000 in punitive relief

   b.) $250,000 in compensatory relief, aqn/or

   c.) A full and fair hearing, before a sitting Judge, unprejudiced by any socio-political factors that may have been at play, adversely influencing the meritable charges Mr. Harri sought against Ms Silva, and/or

   d.) Any other such relief that the Honorable Court deems to be in the best interests of justice.

185. The Plaintiff adopts 1-184 in whole, as facts bearing upon further pleading.

186. The criminal proceedings against Mr. Harris, though without merit from the onset, caused an egregious and ill-informed rush to judgment on the part of the United States Air Force Reserve, with which Mr. Harris was a commissioned officer, with the rank of Captain.

187. The Military Board of Inquiry recommended that Mr. Harris be discharged from his commission Under Other Than Honorable Conditions.

188. Since the Board reached their decision some 30 or so days before Mr. Harris' criminal proceedings got under way, Mr. Harris could not reasonably appear before them. This decision effectively removed Mr. Harris' Due Process right to appear before them and properly defend himself and/or force him to effectively, prematurely waive his Fifth Amendment Right against self-incrimination.

189. The Military Board of Inquiry based their decision not upon any quasi-judicial proceeding, as required by the Administrative Procedures Act, but upon only that information presented as facts, by the Office of the Middlesex County District Attorney, as represented by Defendant Draper.

190. The Office of the Middlesex County District Attorney's failure, combined with their refusal to offer any witnesses to the Board to support their claims, was not in keeping with the principles of justice and in fact, was tantamount to abuse of the same.

191. The Board of Inquiry proceedings, initiated by the allegations made by Ms Silva against Mr. Harris, would never have come to meet, but for the blatant deceit of the "Commonwealth", as represented by the Middlesex District Attorney's Office.

192. The United States Air Force Reserve Board of Inquiry, was given a deceitful representation by the Office of the Middlesex County District Attorney, not in furtherance of justice, but for no other reason but to further promulgate their own lies as this continues their conspiracy to deprive the Plaintiff, Mr. Harris, of his Right to the Equal Protection of the Law.

193. The Plaintiff, Mr. Harris, had decided long before 11 November 2007, which so happened to be Veterans' Day, to dedicate a large part of his life to the defense of the United States Constitution, by virtue of his position as a commissioned Officer, first with the United States Air Force, then with its Reserve component, the United States Air Force Reserve.

194. Mr. Harris' right to the defense of the very precepts of the United States Constitution, was prejudicially and with-cause, removed from him, by the biased, deceitful actions of the Office of the Middlesex County District Attorney, as represented by Defendant Draper and her blatant misrepresentation of the state of the case against the Plaintiff.

195. The preceding set of factsgive rise to a Cause of Action for the deprivation of the Consortium and Employment Rights of the Plaintiff, as they relate to the United States Air Force and its Reserve component.

196. The Plaintiff seeks the following relief from the Honorable Court:

   a.) $1,000,000 in punitive relief

   b.) $2,000,000 in compensatory relief, and/or

   c.) Injunctive relief, in the form of a full and fair Board of Inquiry Hearing, upon the actual facts, with the Plaintiff in attendance in his own defense, or the reversal of the original decision of the Board of Inquiry, and/or

   d.) Any other such relief that the Honorable Court deems to be in the best interests of justice.

197. The Plaintiff was on probation as part of his plea sentencing when in March 2010, he was assigned a new Probation Officer, by the name of Mark Mamet.

198. Mr Harris had never actually met Probation Officer Mamet, when he received a call from him in MArch 2010, where Mr. Mamet demanded a meeting with Mr. Harris, to discuss allegations that Ms Silva had.

199. Probation Officer Mamet both introduced himself as Mr. Harris' new Probation Officer, and simultaneously accused him of violating the terms of his probation by virtue of an alleged Violation of a Restraining Order.

200. Probation Officer Mamet asked Mr. Harris to report to his office, in the same building as the Middlesex Superior Court, a directive with which Mr. Harris complied.

201. The Plaintiff was informed for the first time, that Ms Silva alleged, through the Probation Department, that Mr. Harris had deliberately sent her $1,200, in violation of the restraining order that was still in place at the time.

202. As a result of the meeting with Mr. Mamet, Mr. Harris was able to verify that money intended for a recently-opened checking account, was unintentionally diverted to an account belonging to Ms Silva, that Mr. Harris reasonably believed was no longer associated with his bank account any longer.

203. The Plaintiff not only believed that the money was sent to this new account, he also wrote a rent check on the new account, based upon the deposit he believed was made.

204. Probation Officer Mamet knew all of this before he violated the probation of the Plaintiff, yet proceeded with this course of action anyway.

205. Mr. Mamet first wasted the valuable time of the Middlesex Superior Court with this frivolous claim, then, using the same convinced the Court that he needed to meet with Mr. Harris once a week, until the final surrender hearing regarding his probation.

206. Before leaving the Court, after the initial probation surrender hearing, Mr. Harris left a message with instructions for Mr. Mamet to please call him to set up a time for both of them to meet, to ensure a time when Mr. Mamet was in the office and not out of it, doing home visits.

207. The next day, the Plaintiff called Mr. Mamet and left him a voice mail asking that he call Mr. Harris to set up a date and time agreeable to Mr. Mamet where they may meet.

208. Mr Mamet never called Mr. Harris, yet admitted under oath, that he was essentially in daily contact with Ms Silva.

209. This admission on the part of Mr. Mamet, gives one the appearance that he is not an unbias Court officer, but a jaded advocate, with a personal agenda against Mr. Harris.

210. The Court found that Mr. Harris was not in violation of his probation, by virtue of the alleged violation of a restraining order.

211. Mr. Mamet violated Mr. Harris again, stating that he failed to appear at a meeting with Mr. Mamet, even though Mr. Mamet refused to call Mr. Harris back and set up a time to meet.

212. Mr. Mamet's actions, first based upon the ruse of a violation of a restraining order, then a failed appearance with Mr. Mamet, where Mr. Mamet refused to call Mr. Harris and set any up, were at the very least, suspect, and not in keeping with the principles of justice.

213. The presiding Judge during the final probation surrender hearing, Judge Gershengorn, found that the Plaintiff, Mr. Harris, had violated the terms of his probation, by virtue of his failure to meet with Mr. Mamet. She ordered that Mr. Harris serve the remainder of his suspended sentence.

214. The Plaintiff maintains that Judge Gershengorn erred in finding him in violation of the terms of his probation.

215. The weekly meetings, ordered by the Court after the pendency of thesurrender proceedings against Mr. Harris, were not an order of the original sentencing Judge, Judge Muse.

216. Since only the original sentencing Judge may alter the terms of the probation, Mr. Harris' failure to appear to meet with Mr. Mamet, was not a violation of his probation, but rather a de facto violation of an Order of the Court.

217. The sentence that the Court handed to the Plaintiff on 21 June 2010, is a sentence that was delivered upon him as a result of the Court erroneously determining that he was in violation of his original probation, when in fact he was only in violation of an Order of the Court, which was ordered well after the original sentence was given to the Plaintiff on 9 October 2009.

218. The preceding set of facts gives rise to a cause of action for the deprivation of the Equal Protection Rights of the Plaintiff, by virtue of an overly punitive sentence, handed down under false pretenses, that of a violation of probation, when the facts do not support such a finding.

219. The Plaintiff seeks the following relief from the Honorable Court:

   a.)$500,000 in punitive relief

   b.)$500,000 in compensatory relief, and/or

   c.)Any other such relief that the Honorable Court deems to be in the best interests of justice.

220. The Plaintiff adopts 1-219 in whole, as facts bearing upon further pleading.

221. The Plaintiff, Mr. Harris, has been incarcerated in the Billerica House of Correction, in Billerica, MA, since 21 June 2010.

222. The Plaintiff, Mr. Harris, has spent all but four of his days in the prison, in the Health Services Unit (Infirmary).

223. The staff at the prison classified the Plaintiff into a 'program pod', so that he might be able to take prison-mandated classes, designed for people with charges similar to that of the Plaintiff.

224. Someone in the program pod had read an article, written by the Lowell Sun newspaper about the case that was brought against Mr. Harris, written on the occasion of Mr. Harris' probation surrender, and in the 22 June 2010 edition.

225. Within 1 hour of being moved into the pod, the Plaintiff started receiving death threats, these threats persisted for three days, until they garnered the attention of the Deputy Sheriff in charge of all of the pods.

226. The Plaintiff was in his cell when the Deputy came in and informed him that he had to come with the Deputy, and that he had no choice in the matter.

227. Since being removed from the program pod, the Plaintiff has effectively been held in 'Administrative Segregation', for his own safety, due to the death threats, as well as concern for his medical safety, in light of his Internal Cardioverter Defibrillator.

228. The Plaintiff would not have been the subject of death threats, were it not for the overly punitive sentence, delivered upon the Plaintiff, by virtue an erroneous ruling of a probation violation.

229. The mere fact that a restraining order was issued against the Plaintiff, without Probable Cause, in procedural error, and in contravenance of the Plaintiff's right to the Equal Protection of the Law, one that Mr. Harris was forced to plead Guilty to in October 2009, gives rise to a Cause of Action for the intentional deprivation of the Equal Protection Rights of the Plaintiff.

230. The preceding facts give rise to a Cause of Action for the deprivation of the Equal Protection Rights of the Plaintiff, Abuse of Process and Intentional Infliction of Emotional Distress by the Defendants upon the Plaintiff.

231. The Plaintiff seeks the following relief from the Honorable Court:

a.) $500,000 in punitive relief

b.) $500,000 in compensatory relief, and/or

c.) Injunctive relief, in the form of an appeal of the probation violation, or, at the least, a judicial review of the prescient circumstances and sentence, delivered upon the Plaintiff, by the Middlesex Superior Court, in Woburn, MA, on 21 June 2010, and/or

d.) Any other such relief that the Honorable Court deems to be in the best interests of justice.

## JURY TRIAL DEMAND

The Plaintiff, Maurice Harris, wishes to express his most sincere gratitude to the Honorable Court, for the time and attention It has paid to this Complaint. Further, the Plaintiff respectfully asserts his right to demand a trial, by a jury of his own peers, in answer to the Complaint herein described, as well as to determine the amount and types of relief granted.

Maurice A Harris

Pro Se Plaintiff